Good afternoon, Monica Knox on behalf of Ms. PIRTLE. The restitution order set by the district court in this case was based on the total number of times that Ms. PIRTLE hit the void no sale key or hit the posted to sixth no sale key. There are two major problems with what Ms. PIRTLE took from the post office. The government says that the evidence shows that there is no valid reason for hitting those keys, void no sale, posted to sixth no sale. First, even if there isn't a valid reason, the reason doesn't have to be theft. One of the things that's interesting about the way that... What is a valid reason to hit the keys in the sequence? I'm not saying there is a valid reason. What is a non-theft related reason? When the postal officers testified, they talked about the difference between voiding a sale in the middle of a sale and correcting a sale after the sale has been completed and then someone says I've changed my mind. The void no sale is not supposed to be used for any purpose really, but it's certainly not supposed to be used for a sale that has already been completed. There are several different steps to do that, a clerk's service that undoes a completed transaction. From the evidence, it's a fairly complicated procedure to do that. Maybe what not just Ms. Pirtle, but other employees do is a shortcut and just void no sale instead of undoing it. Now, it's not a legitimate use of those keys. It's not the way they're trained and it's not the way they're supposed to be doing it, but it doesn't mean that there's theft involved in that. The evidence does, is clear from the record from the postal employees who testified that there is no legitimate purpose to hit the void no sales. There's absolutely no evidence in the record about any legitimate purpose or non-legitimate purpose for hitting the postage of fixed no sale key. And part of the restitution in this case was fixed on Ms. Pirtle's hitting of postage of fixed and no sale. And yet there's no evidence in the record that that is related to theft or that there's no legitimate purpose for that at all. But perhaps even more significant than that, when what the record shows is that every single clerk employed in that post office during the time that Ms. Pirtle was there had void no sales transactions. When they investigated it, every single employee had it. And so if the void no sale is necessarily related to theft enough to set restitution for Ms. Pirtle, it means that every single employee in that, every single clerk in that post office during that time was stealing from the post office. Which seems like a fairly extraordinary position. And it makes one wonder why the postal inspectors, since they were investigating this and had run the reports on all the employees and came back with void no sales transactions for every single one of those clerks, why those clerks weren't subjected to controlled buys and investigations and prosecutions. Because if the only explanation for it is theft, then they all were stealing. I would suggest that the evidence doesn't show that that's the only explanation for it, and therefore that this restitution order based solely on those, use of those keys is not reasonably related to the evidence or what the amount of money she took. I'm sorry, did someone have a question? Well, I was going to say, it seemed to me that the problem was she pressed the void and then she presses a no sale, which immediately opens up the cash draw. There was certainly evidence that several of the transactions did involve a no sale being hit seconds after the void key was hit. And according to the postal inspector, those are the transactions that he based the 8,000 on. They're not solely the transaction. What is very clear from the record is that the restitution was based on the void no sales, as well as postage of fixed no sale. And there really isn't any evidence in the record. I reread it again this morning. There is no evidence in the record about postage of fixed no sale. But the other point I was trying to make, Your Honor, was that all the employees had it. Hers happened to be higher than anyone else's. But the lowest one, hers were at 22%, the lowest one was at 5%, which is not an insignificant number. Judge Pregerson, did you have a question? No, I was just going to say we understood your argument well in hand. OK, thank you. Good afternoon. May it please the Court, Adam Kamenstein for the United States. Responding to the issue of restitution, which is one of the two points, or the only of the two points that counsel argued here today. First, I would note, if I could, that the brief, the argument provided by counsel in brief is somewhat different than the argument proposed here today. So I don't know if the government's response, response of brief, will actually be very illuminating towards the argument made by counsel here today. Because in the- And here you are, so you can respond in person. And that's exactly what I'm about to do. The government presented, first to be clear, the restitution order was based solely on the defendant's own conduct. That was the issue raised in the brief, and it doesn't seem to be any longer disputed, so I want to be clear on that. The conduct at issue is the defendant's use of the void, immediately followed by the no-sale key, avoiding the transaction and opening the cash drawer, as was pointed out. The testimony, the only record testimony, is that there is no legitimate explanation for that conduct. And, in fact, that kind of conduct essentially indicates one thing, which is theft. What I think counsel would rather this Court do is speculate as to potential legitimate explanations for that conduct. But there's no record evidence to support that speculation, whereas the only record evidence supports exactly the opposite conclusion. I think she's conceded that there's no legitimate purpose. The question is, is there some other reason that other employees were doing that? And what about the employees that allegedly had 5 percent of their transactions involving this particular combination? Your Honor, the short answer is we just don't know. It may well have been theft. There may be some explanation not yet contemplated. What we do know is we investigated this defendant, and the investigation of this defendant demonstrates, based on the testimony listed at a trial, that this defendant's conduct was fraudulent. It was with the intent to steal. That is what we do know. We don't know why, to that much lesser degree of frequency, those other postal clerks may have had that keystroke combination. That's the short answer. But, that being said, the District Court cannot be said to have abused its discretion in taking what was supported by the record evidence, which is this testimony that this keystroke combination is not legitimate and does indicate theft, an explanation which the jury clearly bought and felt that the government had proved beyond a reasonable doubt. The District Court cannot be said to have abused its discretion in adopting that methodology when it was the only methodology provided to the District Court that was supported by evidence, and not based on speculation, which I think is precisely what the District Court found the defendant's proposed methodology at the time of sentencing to be based on. Thus, the government feels that the District Court's restitution order is supported by a preponderance of the evidence, and not an abuse of discretion. Unless the court has further questions on the restitution, the government would submit on the first issue, which is the Miranda issue. Actually, I'd like to just make one or two brief comments. You don't need to if you have no challenge on it. Well, obviously, we were challenged in the brief, but we haven't been here today. Unless the court has questions on that first issue, then I will submit. Thank you, Your Honor. Thank you very much.
judges: Pregerson, Noonan, Thomas